Good to see everybody this morning. And Judge Luck and I are enjoying our last day this week of sitting with our colleague, Judge Rodney Smith, from the Southern District of Florida, who graciously has agreed to help us out for a couple of days this week. So two cases today. The first case is Absolute Activist Value Master Fund Limited v. Susan Elaine Devine. Numbers 21-13587, 22-11313, and 22-11590, which is also consolidated with You have reserved two minutes, as I see, for rebuttal. And when you are ready, you may proceed. May it please the Court, Matt Learberg for the appellant in these consolidated cases, Ms. Susan Devine. Let me start by answering the Court's question from the end of last week about mootness. Under Eleventh Circuit precedent, a case is only moot when the courts are now unable, in the course of a case, to give meaningful relief. That's the phrase that appears in the case law in this circuit. And what is meaningful relief? Meaningful relief is the power to address the underlying request that the appellant has asked for. Here, the courts still have the power to give Ms. Devine the relief that she's requested. And we cover this, actually, in footnote 16 of our opening brief in the Section 1782 case. But let me summarize it here. The easiest pathway would be for this Court to order the funds to replenish the documents that Spears and Imes say they lost. But, counsel, that's not the basis of the request. In other words, that takes us outside of jurisdiction and outside of what you asked for, which was a specific relief to get a specific set of documents back to a specific place. Now, it may be that you can ask for that relief in a contempt proceeding, which I know has been filed and which you've asked for the very thing that you've just said here. But with regard to what we can do, it is only asked for a very specific, narrow relief to a very specific thing. And so the question about meaningful relief is meaningful relief in the case that is before us, not in the scope of human life of could you get relief somewhere, somehow, someplace, through some other mechanism. And I think Your Honor is exactly right. But that's why the case law uses this phrase meaningful relief. I mean, mootness is a question of subject matter jurisdiction, right? Everyone agrees this Court began with subject matter jurisdiction. Right. Or rather, the district courts did. And so, really, this is the — to kind of reframe the question, the question is, can a party unilaterally deprive the Federal courts of the power to give relief by inadvertently losing the documents? That can't be the rule. It happens all the time. Think of it like — think of it in a constitutional challenge to an ordinance or a statute. A municipality or a legislature could then go ahead and change that law. And that doesn't necessarily mean it's moot. That's why we're having this argument. But it is purposeful action by a party that deprives a court of later jurisdiction. It happens all the time. Now, whether this happened purposely or whether it happened accidentally, that's something that you are going to litigate, that you have filed a contempt proceeding, and that will be litigated. But the question for us is, how can I give your client what your client has asked for, where that very thing she has asked for is gone? I can't do it. I think there's two answers to that question. First, let me differentiate — Your Honor is absolutely right. Probably the most common way these mootness issues arise is when there's a change in the statute, change in regulation, some sort of kind of governmental shift in the playing pieces on the board. That's a permanent change. That's a change that changes the actual underlying case. This is a temporary issue. I mean, our copy, Ms. Devine's copy of the documents, if we trace the provenance of it, ended up on Spears & Iams' hard drive. But for all we know, there's another copy in a different place at Spears & Iams. There's a copy on their servers. There's a copy in their e-mails. You may be right. And again, no, there's no way we can know that. We are not a fact finder, and that's not there. But the thing is, what I — and I'm only speaking for myself. I have not talked to any of my panel members about this. They may think I'm insane. But you have asked for a specific thing. Forget, let's call it documents. Let's call it Ms. Devine's pencil. And there's only one of those pencils in the entire world. And that pencil made its way from Ms. Devine's home or business to the clerk of court to the attorney for opposing counsel. And pencil is now gone. It has disappeared. How could we return the pencil? I think there's two answers to that, Your Honor. First, of course, a pencil's somewhat different from a digital copy. I mean, yes, our copy is the thing that was lost. But the identical, you know, bytes, the identical data could be made judicial representations in court that they would maintain their copy of the documents. So, I mean, this Court is not so toothless as to be able to tell the funds, a party who started this proceeding by bringing a Federal — by invoking the jurisdiction of Federal court in the middle district of Florida, to tell the funds, you promised you had a copy, transfer it to Spears & Ives. I mean, this Court absolutely has that power. It can't be so toothless that it can't give that relief, or else we'll just keep playing this game. But to me, the problem is that that power — a court certainly has power to give you remedy. But the question is, in this appeal, for the relief that you asked for, do we have the ability to give that? Those are separate questions. And so I actually think the answer to the first one is, yes, you do, probably. But as to the second one, I'm much less sure. And in part because of the representations that have been made to us, and the litigation, that there is one, and that one is your clients, and that one thing has been transferred to A, then to B. And now — and now you want us, from B, to give it back to your client. In your argument, the representations that are quoted in this Court's order from Friday were regarding our concern that there's an extraterritoriality problem here, and that as soon as the funds, which are Cayman Islands' entities, are able to get outside of the federal court's jurisdiction in the United States, then they can destroy the documents and they're gone forever. And I know there's a multiplicity of proceedings here, but really all of this is geared towards one thing. Ms. Devine has one thing, which is she wants to be able to defend herself in Liechtenstein and Switzerland. It's actually fairly direct. We're just trying different procedural mechanisms to arrive at the same place. I think the problem is that the funds — right now, we're in a world where the funds have subjected themselves to jurisdiction of the federal courts. They have promised they have a copy, and there shouldn't be — yes, the particular copy we requested, that we traced, was the only one we know of in the United States. But that doesn't mean that the funds aren't here. They are present. And there's kind of — that kind of plays into this question between the 1782 resides where it's found, that kind of reach of subject matter jurisdiction. But as compared to funds versus Devine, right, the main case, where, of course, the parties in counsel to that are subject to the jurisdiction of the district courts in this Court. And it's — I just — and we should move on, because you have a lot of other stuff to talk about. But there just seems to me a difference between the possibility of you getting relief down the road from some court for the reasons you've stated, which is, they're before the court. They violated a court order. There is remedies for violations of court orders. We even said so in our first appeal, which is different from as to the one copy that I handed to A that is now in the hands of B and that B is telling me is now gone, whether we have the ability to grant you relief with regard to B. Now, I think to just — to summarize what I think is the best answer to your question, Your Honor, is that the federal courts have sufficient power to look at the relief requested at a higher level of generality and to kind of end the proceedings, right? I mean, under Your Honor's proposal, we would be back before the district court and possibly back before this Court. And I think the one thing that at least everybody agrees on is we'd love to have resolution. Article III is annoying that way. It is. And that's just it, is I can see the prudential reasons why this Court might think, well, this is a different copy. But, I mean, subject matter jurisdiction is something you either have or you do not, of course. And I think that, you know, for a party to be able to, by its inadvertence, to deprive this Court of the power to do anything just seems a bridge too far. So let's move on. I know you have a bunch of things on the merits. Tell us the most important, the worst error here that needs to be corrected in one of the four appeals we have before us. Your Honor, here, I think the clearest error on the law is the district court's reading of the protective order. I mean, the protective order has three possible elements in the disjunctive for how a party can voluntarily respond to a request. As to that issue, just a predicate thing. So a lot of you treat this as if it's a contract and give us contract principles for how things are read. But you agree with me this is a court order, right? It's both. It's the classic Schrodinger situation. These orders, as this Court noted in its earlier opinion in this case, there are kind of different ways of looking at it. There's the protective order, an order of a court subject to contempt proceedings. Right. And then this Court also said, however, you could look at it as a contract and, you know, examine those principles of expectation, interest, and the like. For our purposes, it's an order that you're appealing as having been violated. So this isn't a separate contract proceeding. So we have an order of the court. What does our case law say about the deference given to a court in reading its own orders? Right. It's absolutely true that if this were an ordinary order of the court that the court drafted itself on motion or sua sponte, absolutely, the court could say, that's not what I meant, or could even just revise the order, right? I mean, the court has plenary power to do that. This is a situation, and I think protective orders are unique, as this Court noted in the first appeal, that they also have this expectation interest, right? And there's the question of, would the parties have brought the documents and disclosed them in the first place? You're going to have to explain that to me. Courts sign proposed orders all the time. All the time. I mean, it is impossible for a court, especially a busy district court, to sign  So parties draft an order and say, court, we propose this order. Will you enforce this order as it? A court looks at it, reads it, and says, I am giving my imprimatur to this. This is now the order of the court. How is that any different from anything else in terms of how a court then can interpret its own order? And again, Your Honor, I think this is actually something that probably counsel on both sides agree on, which is that a protective order, it's not a protective order as to like one particular deposition, right? We're talking about these blanket protective orders that are entered at the beginning of the litigation and that govern the party's expectations for everything, for the entire discovery process. Do they feel comfortable disclosing documents? If they do, what happens to their confidential information? What are their expectations? But counsel, you've got to answer the question for me, which I understand all that. I've read it many times. What I'm asking you is, our case law seems clear to me, and tell me if there's any deference in interpreting its own orders. And we will only reverse that where it's not plausible, completely unreasonable. Well, and Your Honor's right. And I think we can just skip right ahead to the answer here, which is that the protective order says what it says. There's no ambiguity here. This is a classic textualist question. And you can approach it as a textualist. Okay. Well, on that point, why don't we look at paragraph 14 of the protective order, which provides the parties may disclose discovery material. How do you deal with the permissive language of this and then claim that the district court got it wrong? Right. And, Judge Branch, we've never said that this is a mandatory provision. That's something of a straw man in the funds briefs. It is voluntarily. And Ms. Devine had the option as to whether to invoke this provision in response to the request for her copy of the documents. It's the mere version of exactly what the funds have done all along. They drafted this. They included this somewhat unusual language about foreign tribunals for a reason and then repeatedly exercised it over our objection. Earlier in the case, we tried to oppose. I thought the representation from opposing counsel was that there was no objection in producing the documents earlier to the Swiss authorities. Oh, there was a fight in the record. And I can get the sites. But in 20, I believe it was 2017, there was an attempt to share the documents with the Swiss. There's an objection that was filed on the record by us to say, no, it's too informal a request. And the Court said, read the protective order. The same Court, right, said read the protective order. It says informal requests from foreign sources are perfectly valid. So that, in a sense, is the law of the case. That is what the order means. It's been applied as a matter of fairness. But why is it unreasonable for a court to read legal process as requiring some sort of formalistic request in an order or mandated directive to do something? And if the Court were to do that, that's fine. But then that third clause is intended to fill in those gaps. Why is it unreasonable to read prosecuting authority as — I'm sorry. It's not prosecuting authority. It's a criminal authority. To read criminal authority as a prosecuting agency and not as a court of law. It is unreasonable. Is used separately in the same sentence. Your Honor, time is about to expire. I'd like to answer your question, if I may. Please do. Thank you so much. Yes, Your Honor. But the way that the disjunctive is written, there are three possible ways. They're intended to cover just about everything. The request — the third is pursuant to a request for information from any international, Federal, or State criminal authority. Furthermore, the court in Lichtenstein, it's a little bit different from how we do it here. That's an investigatory body. It's not the classic adversarial system. That judge is also, in a sense, the prosecutor. That judge is gathering the information just like a DA might or a U.S. attorney might in our system. And I see that my time's expired. Thank you. You have two minutes for rebuttal. Thank you, Your Honor. You may proceed. Thank you, Judge Branch. And may it please the Court, Eric Kaye, on behalf of the Appellees, who I'll refer to this morning as the Fonz. I'd like to begin with the Section 1782 appeal. The district court's order should be a fine — Can you begin with mootness, counsel? Absolutely, Judge Locke. We somewhat agree, but on different grounds than our opponents on the mootness issue. We believe the Lichtenstein appeal and the 1782 appeal are not moot. This Court, a case is not moot as long as the district court can grant any effectual relief. But it — you're right as to a district court. But there's — our case law is separate for the appeals. And whether we can grant relief — and as I understand it, the representation has been made — and I need you to answer this. I don't know — I want you to clarify. The representation has been made that the copy that was in the possession of the law firm, which is the only thing the subpoena is directed to, is missing. True or not true? The only thing that Spears and Imes has represented is that the hard drive is missing. Now, this is Docket Entry 3 — Which was — which was Ms. Devine's copy. It was her copies that were sent from the clerk to Spears and Imes. But Spears and Imes has not represented that there are no other copies. And this is Docket Entry 3 in the Section 1782 proceeding where Ms. Devine says — and I'm quoting here — Spears and Imes confirmed via e-mail that it possesses the physical documents sought by way of this application. And if you look at the relief that she seeks in both the Lichtenstein appeal, which there's a lot of nomenclature going on. We refer to it as the Lichtenstein appeal, so the protective order issue. And then the 1782 appeal. The Lichtenstein appeal, she refers to specific deposition records, specific physical documents. And the subpoena she seeks in the 1782 proceeding is all documents received. And she also refers to the 1782 application. So Spears and Imes has made a representation. They — only representation she made to the — or, excuse me, they made to the courts below is that the hard drive is lost. So based on her representations from the relief that she seeks, this Court — it shouldn't, but this Court, if it were to rule in her favor here and reverse and send it back, the district court could order the relief she's seeking, which is sending the physical documents themselves to her or to the Lichtenstein court. But you agree — you agree, though, that those are separate and apart from what I'll call her copy, the one copy that she had that went to the clerk that went to the Which is why we think the first appeal, which she refers to as the transfer order appeal, is moot, because that just deals with the hard drive that was sent from the clerk to — And the appeal of the motion to enforce, because that — that asks for the same copy back, doesn't it? We do not read it as such. This is Docket Entry 822 at 10 and 17 in the main proceeding. An order directing the funds to provide the deposition records to Ms. Devine's or in the alternative to the court, that's the Middle District of Florida, so that the deposition records can be forwarded to the Lichtenstein Regional Court. Nothing about the hard drive or about her copies. But there's a ton of representations that there's only one — it's the only one in the United States, and that's the one that she had that went to the clerk that went to you. I mean, in other words, the predicate for asking that enforcement what you just read, which is the relief clause, is that there was only one copy that I had and that I deposited that with the clerk at court pursuant to the revised order from the last appeal, and that that was as a result of the transfer order sent to the law firm. Well, Judge, look, I — as I understand the representation that she has made, it's that Spears & Ines is the only institution — I think those are the words she uses — in the United States that holds the copies. She's never said that her copies are the only copies in the United States. And as I've been saying, the relief that she seeks in the Lichtenstein appeal and the 1782 appeal is simply the documents. It's not the hard drive that contains her copies. So that is why we think that the Lichtenstein appeal and the 1782 appeal, if it were to send it back, rule in her favor here and send it back, the district court could grant the relief she seeks, which is physical copies of the documents, which is really what she wants here, is the documents to send them to Lichtenstein to deal with this apparent criminal investigation going on here. So if it — Right. Why don't you get to the merits? Okay. So to go back to what I was saying earlier, the 1782 order should be affirmed for three core reasons. The first is that the statute's resides or is found requirement does not go to a district court's subject matter jurisdiction. And we know that if you look at the main case that Ms. Devine relies on, and that's the Fourth Circuit's recent decision in Wray, Eli Lilly. I just don't think — silence regarding jurisdiction is not evidence of or case law on jurisdiction. You're right that they didn't — they would have dismissed it if they didn't have subject matter jurisdiction. But where they don't comment on it, there's no way that we could treat that as precedential in any way. Respectfully — Respectfully — yeah, respectfully, Judge Luck, I don't think it was what's often been referred to and what Judge Branch referred to in one of her recent opinions is drive-by jurisdiction. I don't look at it that way. Obviously, the Fourth Circuit's opinion — Show me the part that mentions subject matter jurisdiction. It's not in there. Right. That's why it's a drive-by. Respectfully, Judge Luck, I don't quite look at it that way. And this Court — Any way you want, but I'm telling you that it's not persuasive to any court on subject matter jurisdiction where it doesn't rule on subject matter jurisdiction. Well, I'd answer it this way, Judge Luck. I would say two things. First is that both the Supreme Court and this Court have never referred to Section 1782's requirements or the statute itself as dealing with jurisdiction in the sense that this is Article III. I suggest we look at the Fifth Circuit's opinion in Conner, where the Court says, like, this is not Article III traditional adversarial litigation, Smith v. Jones. This is a quasi-administrative proceeding. It's district courts are essentially acting as they would in any discovery capacity. Where does our — where does our Article III jurisdiction come from? The Constitution. I understand that. Obviously, Article III is the Constitution. And Congress. Obviously, courts in most instances can't exercise jurisdiction unless Congress gives it to them. Right. So where does it come from in the 1782 proceeding? Congress enacted a law, but it's not jurisdiction in the sense of subject matter jurisdiction and that it cannot be waived. If Spears and Imes here says, I'm — or at least they haven't disputed it. They've consented to the middle district's jurisdiction when it comes to the contempt motion. Do you agree it's not a cause of action? 1782 itself. So we've made the argument that it could be viewed as a cause of action. But we don't — But you agree that it's not? We don't think it is the best argument. We think the Court should say that it's, as the Fifth Circuit has said, really is the Supreme Court setting the intel. So, Counsel, if it's not a cause of action, and I think that's probably right of you to make the quasi-concession you just made here, it can arise under 13 — under the arising under jurisdiction under 1331. And so where does it come from? Again, I would say it's a quasi-administrative mechanism. Just as the Federal rules contain mechanisms, mostly Rule 45, dealing with issuing But with respect to facilitating discovery requests for — But there, there at least is an ancillary Federal proceeding out there. In other words, there's at least diversity of jurisdiction such that someone can't get somebody else, so you have two people from different places. Or there's a Federal proceeding in another district. So there's something underlying it. What's underlying it? It has to come from somewhere. In other words, the Article III says we have jurisdiction for arising under and out of diversity. It has to be one or two of those things, right? Or if it's a treaty or something else. But it's got to come from somewhere. It's still a case. And it's a case — it's not necessarily a controversy, but it's still a case. And Congress has given the district courts the authority to facilitate jurisdiction. It's authority. Those are the words — the case standing is a necessary but not sufficient basis for. In other words, there could be a dispute between a party that gives it standing, but there still has to be independent subject matter jurisdiction. Those are separate things. They are. But in this instance, it can be an ex parte proceeding. It could be not Smith v. Jones, but just Smith asking for a subpoena. And then the subpoena could be to Jones, and Jones objects. So in this sense, it's a case, but it's not a controversy in the sense that you have to have the ingredients of standing that you're referring to. So in that sense, no court has looked at it as dealing with subject matter jurisdiction. And it can be waived. And in this instance, it was. Spears and Imes has appeared in the 1782 proceeding. First of all, they never objected in the first instance. They let the funds take over because we have standing because they deal with it. It's our documents. Then — so they never objected to begin with. Then they come in in the 1782 proceeding when Ms. Devine moved for contempt, and they never said, Judge Seale, Middle District, you don't have the authority to do this. They just — whether it was implicit or explicit, waived there. Now, even in the alternative, we would say Spears and Imes is found in the Middle District of Florida, and mainly for three core reasons. If — let me ask you this, though. If — it seems odd to take the positions you're taking, because if it's not a matter of subject matter jurisdiction — let's assume that for the moment, you're right — then why is the Court not wrong that they're not found there? In any sort of traditional sense. And I think — I'm only speaking for myself. I think the Fourth got it right. So if the Fourth gets it right that found has to be there or an officer or agent being there, in other words, sort of the pre-International Shoe understanding of personal jurisdiction or venue, why is the Court wrong in that sense, that, in other words, it's not a subject matter jurisdiction requirement, and that requirement as read by the Fourth Circuit is wrong, and therefore, you win? Well, then that gets us back to where we were with Eli Lilly. And that even if — all right, you know, for the reasons we've set out in your brief, we think that found should be viewed as a broader measure, but assuming for the purposes of your question, Judge Locke, I would put it this way. Spears and Imes has consented to being found in the Middle District of Florida. So you don't have to get that far. This is a question that — we've said it's a statutory requirement. We've listed that, right? In — in — in Klosiri, we said here are the four statutory requirements for 1782. One of those is it has to be found, and that wasn't — there is no finding here. So, in other words, you're treating it like personal jurisdiction and venue. The trial court, the district court, treated it as a statutory requirement and — and found that it wasn't met here. Why is that wrong, and why would we not affirm in that basis, again, assuming you're right with regard to subject matter? He'd be fine on whatever basis the Court affirms. That would be — I assumed you'd say that. Well, that's my answer to your question. And, you know, the — I can see why — that doesn't — to go to — and I think this is where you're going, Judge Locke, is that it's not subject matter jurisdiction for that reason. Yes, this Court in Clarika, you're absolutely right, has said it's a requirement. And you won't go to the intel factors if it's a requirement. Right. She could fail on any other reason. Right. And so it should be denied. Now, it would be different, perhaps, if Spears and Imes didn't consent to the jurisdiction, but it did. And think of kind of the paradox that we'd be dealing with if it didn't. She's asking for the same relief in the main proceeding, the same court that she's asking in the Lichtenstein appeal to compel production of the same documents under the same letter. She's saying you can't do it. The same judge can't do it in another proceeding. So, you know, for — there's likely a split here, and there's no reason for the Court to wade into it. And so for that reason and for the reasons that you're mentioning, Judge Locke, she hasn't established that it's found. It certainly doesn't go as far as subject matter jurisdiction, and for that reason, it should be denied. Now, I'd be happy to explain why it should still be denied under the intel factors as well. Why don't you talk about the — what you call the Lichtenstein appeal? Sure. Thank you. So as you said earlier and Judge Brandt said earlier, this is clearly a permissive provision. It says may. Judge Steele is — though is the may is — again, and this has to accept a lot of things you don't accept, but the documents should be theirs. She should be having them, and the may is directed at her to allow her to be able to give them out. That's what — that's how they read the may. That is how they read it. It's not how Judge Steele read it. And to go to a question I believe you had was what standard of review do we have? And I suggest you look at the Chiquita case. It's not just abuse of discretion. It's is it deferential? Is it even reasonable? Judge Steele has lived with this case for eight years. He signed on this protective order, and he looked at it and said it's may. So I'm actually more curious about the subject matter jurisdiction, apart from of the appeal. Because if you apply Activist 1, it would seem to me that you just ask the court to do the very thing the court was told — said that we just said the court could not do. And that, Judge Luck, is what we argue in the brief. If she is not the receiving party anymore, and she couldn't be, because when the district court in the modification order — I'm going to use that nomenclature, so Judge Steele denied the modification motion, she also moved for a stay. The district court said no, and I'm going to send them — you got to send them to the court in 15 days. And what did this court describe it as? It described it as the district court following up on what the protective order requires, which is the return or destroy requirement. So she is not the receiving party. She can't be the receiving party. And the confidentiality provisions deal only with the receiving parties. So, Judge Luck, you're absolutely right. I'm looking at something more fundamental, which is we went out of our way to say, here are the four ways or three ways in which you can get the relief that you're seeking. And one of those ways was not to go back to seek a motion to enforce in the same proceeding in which we already said we have no collateral or ancillary jurisdiction. Judge Luck, we'd be happy on any way that you would say that they lack subject matter jurisdiction to grant the relief she seeks. And if that's the ground you choose to affirm, we'd be absolutely fine with that. I'm not sure how we could have certain jurisdiction, but that's the only question I have. If the subject matter jurisdiction goes to that and not 1782, I agree it's a modification. It violates the last opinion of the Court and can't grant relief. Judge Branch, I do see my time has expired.  You can give one sentence. One sentence. This case has been going on for five years. It's time to bring it to conclusion. Please affirm in the appeals that aren't moved. Thank you. Thank you. Mr. Learberg, you have two minutes for rebuttal. Thank you, Your Honor. May it please the Court. I would ask the Court to take a look at the subpoena language itself. It's in the appendix, page 25, DE1-1. It doesn't ask for the hard drive. It asks for any copies of the documents that Spears and Imes has. As for the question of jurisdiction under 1782, of course, there's a difference between the similar language in Article III about arising under and the specific language in 1331. The language in 1331 is a proper subset of Article III jurisdiction. And Judge Luck's question is exactly right. Where is the statutory authority process of elimination? The only place it could be is 1782. I mean, under the funds theory, the United States District Court for the District of Guam has subject matter jurisdiction over the funds in a 1782 action, and that just cannot be correct. Your Honor, this Court should not affirm the 1782 ruling, though a court below found that by finding that there was no jurisdiction, or rather that there couldn't be — Spears and Imes couldn't reside or was found in the district, the next step should have been under Section 1330 — I'm sorry, under Section — forgive me — the Court should have transferred the action back to the Southern District of New York because it didn't have jurisdiction, that Court did have jurisdiction, and that would be in the interest of justice. This Court has — I think some of the kind of questions that arise in many of the funds briefs is this idea of forum shopping or end-around. Ms. Devine has a single goal here, which is to obtain copies of these documents or have copies of these documents sent to the overseas authorities so that she can disputes, which is that there are two ongoing criminal investigations against her. That singular goal can be advanced through any of these alternative pathways. We would ask that the Court reverse the orders in the first two cases and in the 1782 case to reverse and direct or directly transfer — directly order the transfer of that case to the Southern District of New York for its analysis in the first instance. Thank you, Your Honor. Thank you both. We have your case under advisement. Thank you. Thank you. The second case —